**211 P.2d 806**

**WAUGH v. LENNARD.**

**No. 5130.**

Supreme Court of Arizona.

Nov. 21, 1949.

216

Laney & Laney, of Phoenix, for appellant.

R. C. Stanford, Jr., of Phoenix, for appellee.

UDALL, Justice.

This is an appeal by Margaret B. Waugh, plaintiff in the court below, from an order of the superior court of Maricopa County, sustaining defendant's motion to dismiss her amended complaint, and from the judgment entered pursuant thereto. Defendant in the case was Anna S. Lennard, as executrix of the estate of A. W. Lennard, deceased. We shall hereafter call the parties plaintiff and defendant respectively.

To determine this appeal it is necessary that we set forth in some detail the allegations of the amended complaint. In substance it is alleged as follows:

That on July 19, 1932, decedent, A. W. Lennard, being justly indebted to one Evelyn M. Morehouse and R. J. Morehouse, her husband, gave his promissory note in favor of Evelyn H. Morehouse in the principal amount of $2,590.76, payable one day after date; that on March 4, 1937, said Lennard, being further justly indebted to said Morehouses, gave his promissory note to them in the principal sum of $500, payable on demand; that no part of either the principal or interest of either of said two promissory notes has been paid; that neither of said promissory notes is barred by any statute of limitations; and that the defendant is estopped to plead or claim that they are so barred, because of the following facts and circumstances.

That about the year 1925, A. W. Lennard, who was an attorney at law practicing in Phoenix, entered into a joint adventure agreement with said Evelyn H. Morehouse and R. J. Morehouse, her husband, by the terms of which the Morehouses were to advance their funds to Lennard from time to time, and Lennard was to use said funds, together with funds of his own, in the business of purchasing and dealing in notes, mortgages, and real properties for profit, and he was to give said Morehouses a share of the profits arising from said business; that during the years 1925 to 1937, pursuant to said joint adventure agreement, the Morehouses advanced their funds from time to time to Lennard, and the latter used the same, together with funds contributed by himself, in a large number of transactions of purchasing and dealing in notes, mortgages, and real properties, from which business large profits were made; that from time to time Lennard gave Evelyn H. Morehouse, for herself and her husband, his promissory notes evidencing what he

claimed to be their share of the profits of said joint adventure; that during all of said times and up to the time of the death of Lennard on December 12, 1946, there was a relation of trust and confidence between the Morehouses and Lennard, and the Morehouses had no accurate knowledge and kept no accounts of what was due them from Lennard, but trusted the latter to keep such accounts and to pay them; that to facilitate the use by Lennard of the funds of the Morehouses, Mrs. Morehouse, at the suggestion and pursuant to the request of Lennard, made out, signed in blank, and placed in her safety deposit box in Phoenix, a number of withdrawal receipts or checks upon her savings accounts in Phoenix banks, and gave Lennard a key to said safety deposit box and authority to enter the same at his will; and that thereupon Lennard filled out and used such withdrawal receipts from time to time whenever he wanted to use funds belonging to the Morehouses.

It is further alleged that from time to time during the progress of the joint adventure, Lennard reported to the Morehouses that substantial profits had been made by the use of their said funds, together with his own funds, but stated to them that he was short of money and that he would prefer to give his promissory notes evidencing his indebtedness to the Morehouses; whereupon Evelyn H. Morehouse, acting for herself and her husband, agreed to accept such promissory notes and pursuant to such agreement in the years 1926, 1927, and 1929, Lennard gave to Mrs. Morehouse as evidence of the amounts so owing by him to the Morehouses a number of promissory notes; and that he did not pay said promissory notes, but later cancelled the same and gave in lieu of the principal and interest due thereon a promissory note in the principal amount of $2,590.76, and later as evidence of his further indebtedness arising out of the said joint adventure agreement and his borrowings from the Morehouses, gave another promissory note in the principal amount of $500.

The amended complaint further alleges that on March 5, 1937, for the purpose of inducing the Morehouses to refrain from enforcing collection of said $2,590.76 note and said $500 note until after his death Lennard wrote out in his own handwriting and signed and delivered to Mrs. Morehouse a writing worded as follows:

"Phoenix, Ariz.
"Mch. 5, 1937

"This is to show that the statute of limitations is not to bar any of the notes I have given to Evelyn H. Morehouse or R. J. Morehouse

"A. W. Lennard."

It is further alleged that after delivering this written statement, and on numerous occasions before the expiration of six years after the due date of either of said notes, Lennard, for the purpose of inducing the Morehouses to refrain from collecting the notes until after his death, stated and repre-

sented to the Morehouses that he had arranged his affairs in such manner that neither of the promissory notes would be barred by the statute of limitations, but would be collectible out of his estate after his decease; and further stated and represented to the Morehouses that the aforesaid writing signed by him would in itself prevent the notes from being barred by limitation, and would enable the holders thereof to collect the same from his estate upon his death, regardless of how long thereafter such death might occur.

Then it is alleged that Lennard at the time of making said representations was an attorney at law of many years experience, and represented to the Morehouses that he was, and that in truth he was, skilled in and possessed of special knowledge of the law, including the law relative to the statute of limitations; that said Morehouses then had no skill in or knowledge of the questions of law involved; that they believed said statements and representations to be true, and acting in reliance thereon refrained from enforcing either of the notes until after the death of Lennard; that the Morehouses had no knowledge of the falsity of said statements and representations and owing to the relation of trust and confidence between them and Lennard had the right to rely upon said statements and representations, and were deceived thereby. It is further alleged that besides being engaged in such joint adventure with the Morehouses, Lennard was acting as their business agent and legal advisor in the premises, and that they had great confidence in him.

It is further alleged on information and belief that the statements and representations made by said Lennard to the Morehouses were false and untrue in that the writing of March 5, 1937, did not in and of itself have the legal effect of preventing the running of the statute of limitations against said notes; and it is alleged that Lennard in making said statements and representations, either knew them to be false and untrue and intended to deceive the Morehouses thereby, or else made the same recklessly and without knowing them to be true; and that by virtue of all of the premises, Lennard in his lifetime and his executrix after his demise, were and are estopped to claim that either of the promissory notes is barred by any statute of limitations.

Next it is alleged that neither of the promissory notes in question fell due until after the death of Lennard, in that after the making thereof and before the running of the statute of limitations Lennard and Evelyn H. Morehouse, acting for herself and her husband, agreed for a valuable and sufficient consideration to extend the time for payment of the principal and interest of both notes until after the death of Lennard and until the notes could be paid in due course of the administration of his estate, and further agreed that meanwhile the Morehouses would not enforce

collection of either of the notes, and that upon the death of Lennard the notes, with the interest therein provided, would be paid in the due course of the administration of his estate. Plaintiff has admitted in her brief that the only written memorandum concerning the extension of the due dates of the notes in question was decedent's written statement of March 5, 1937, heretofore set forth haec verba.

Then it is alleged that A. W. Lennard died testate on December 12, 1946, in Maricopa County, and was a resident thereof; that on January 8, 1947, Anna S. Lennard, his surviving widow, was appointed as executrix of his estate; that said executrix caused due notice to creditors to be published; that within the time for presenting claims Evelyn H. Morehouse presented her claim upon the two promissory notes in question, which claim was rejected by the executrix; and that thereafter and within the time for presenting claims, Evelyn H. Morehouse and R. J. Morehouse, her husband, duly presented their amended claim for the indebtedness evidenced by the two promissory notes, which said amended claim was thereupon rejected by the executrix.

Then it is alleged that twelve days after such final rejection, said Evelyn H. Morehouse and R. J. Morehouse, her husband, by an instrument in writing, duly assigned to plaintiff Margaret B. Waugh all their interest in said promissory notes and the funds due thereunder, and their aforesaid claims which had been presented to and rejected by the executrix, and that the plaintiff is the owner and holder of said promissory notes and said claims.

The prayer of the amended complaint is that the plaintiff have judgment for the amount of principal and interest due upon said promissory notes, together with the attorneys' fees therein provided, and their taxable costs.

Defendant filed her motion to dismiss the amended complaint alleging as grounds for dismissal that same fails to state a claim upon which relief can be granted, in that the action was not commenced within the time limited by sections 29-203 and 29-205, A.C.A.1939, and in that the agreement extending the time for payment was not to be performed within a year, and was not in writing as required by section 58-101, A.C.A.1939. Thereafter on April 12, 1948, the court entered its order granting the defendant's motion to dismiss the amended complaint, whereupon and on the same day the defendant paid the judgment fee of $10 and the clerk entered judgment accordingly. This appeal followed.

Plaintiff presents the following assignments of error:

(1) That the court erred in granting the defendant's motion to dismiss the amended complaint, and in thereby holding that the amended complaint fails to state a claim upon which relief can be granted.

(2) That the court erred in holding that the facts pleaded in the amended complaint

do not estop the defendant from claiming that the promissory notes in question are barred by the statute of limitations.

(3) That the court erred in holding that the agreement to extend the due date of the promissory notes in question, as pleaded, did not prevent the notes in question from being barred by the statute of limitations.

In support of the foregoing assignments of error, plaintiff submitted some six propositions of law. The legal principles therein stated will be hereinafter referred to.

■ On appeal in determining the legality of the trial court's ruling in granting defendant's motion to dismiss the plaintiff's complaint on the ground that it failed to state a claim upon which relief could be granted, all material allegations of the complaint and all reasonable intendments arising therefrom are presumed to be true. Collier v. Stamatis, 63 Ariz. 285, 162 P. 2d 125.

In drawing her pleading plaintiff recognized in setting up the two notes sued upon that the amended complaint upon its face was vulnerable to the plea of the statute of limitations. To meet this situation facts heretofore recited were pleaded which plaintiff contends estops defendant from successfully asserting that the notes in question are barred by the statute of limitations. Defense counsel have raised the further point that the alleged oral agreement to extend the due date of the notes is unenforcible by virtue of the statute of frauds.

We first consider that phase of the law having to do with the contention that decedent, A. W. Lennard, during his lifetime, and his executrix after his death, are, under the allegations of the amended complaint, estopped to rely upon, or to claim that the notes sued upon are barred by, the statute of limitations. The following general statement from 34 Am.Jur., Limitation of Actions, sec. 411, states the law relied upon by plaintiff: "It is established by the overwhelming weight of authority that the equitable doctrine of estoppel in pais is applicable in a proper case to prevent a fraudulent or inequitable resort to the statute of limitations, and that a debtor may by his representations, promises, or conduct be estopped to assert the statute where the elements of estoppel are present. Concisely stated, parties may by their words or conduct estop themselves from pleading limitation. The doctrine of estoppel to rely on the defense of limitations is entirely independent of statutes providing for the suspension of the statute by an acknowledgment or new promise, and will not be applied except where it would be inequitable to refuse to apply it. * * *."

See also 34 Am.Jur., Limitations of Actions, Sec. 413; 53 C.J.S., Limitations of Actions, § 25; Munger v. Boardman, 53 Ariz. 271, 88 P.2d 536; Izard v. Mikell, 173 Miss. 770, 163 So. 498; Manzell v. Hightower, Tex.Civ.App., 159 S.W.2d 552; Kraus v. A. H. & D. H. Morris, Tex.Civ.

App., 245 S.W. 450; Smith v. Dupree, Tex.Civ.App., 140 S.W. 367; Dodds v. McColgan, 229 App.Div. 273, 241 N.Y.S. 584, 588; Gorowitz v. Blumenstein, 184 Misc. 111, 53 N.Y.S.2d 179.

Concerning the elements and requisites of equitable estoppel (or estoppel by conduct or in pais) we quote the following from 34 Am.Jur., Limitations of Actions, Sec. 412: "The general principles, elements and requisites of estoppel in pais apply in cases where the doctrine is sought to be applied to prevent the setting up of the statute of limitations. While the cases in which an estoppel to defend upon the ground of the statute of limitations are confined generally to instances in which an element of deception is involved, *actual fraud in the technical sense, bad faith, or an intent to mislead or deceive is not essential to create such an estoppel.* It is sufficient for this purpose that the debtor made misrepresentations which misled the creditor, who acted upon them in good faith, to the extent that he failed to commence action within the statutory period. * * *" (Emphasis supplied.)

This court in several instances has defined equitable estoppel and laid down the requisites thereof. Typical thereof is this statement from Bohn v. Hill, 32 Ariz. 545, 260 P. 1096, 1098: "To constitute an estoppel in pais three things must occur: First, an admission, statement, or act inconsistent to the claim afterwards appealed and sued on; second, action by the other party on the faith of such admission, statement, or act; third, injury to such other party, resulting from allowing the first party to contradict or repudiate such admission, statement, or act." See also Lillywhite v. Coleman, 46 Ariz. 523, 52 P.2d 1157, 1158; Valley Products, Inc., v. Kubelsky, 49 Ariz. 500, 68 P.2d 69; Heckman v. Harris, 66 Ariz. 360, 188 P.2d 991.

It becomes necessary at this point for us to consider certain prior opinions of this court which are cited and relied upon by both parties. The case of Forbach v. Steinfeld, 34 Ariz. 519, 273 P. 6, was an action upon two promissory notes each of which incorporated an express waiver of the statute of limitations. The court, recognizing that the authorities were in hopeless conflict upon the question, committed this jurisdiction to the principle that a debtor may not bind himself in advance to waive the defense of statute of limitations, since such statute is not merely for the protection of the individual, but is founded upon public policy. Later in the case of Steinfeld v. Marteny, 40 Ariz. 116, 10 P.2d 367, we applied the same principle to a stipulation in a renewal note purportedly waiving the statute of limitations, by holding that such a stipulation was also void as against public policy. In the Forbach case, supra [34 Ariz. 519, 273 P. 9], appears this quotation taken from the case of Crane v. French, 38 Miss. 503, viz.: "The reason is, that the right to make the defense is not only a private right to the individual, but it is founded on public poli-

cy, which is promoted by his making the defense, and contravened by his refusal to make it. The same principle is applicable to the policy of Statutes of Limitations; *and with regard to all such matters of public policy, it would seem that no man can bind himself by estoppel not to assert a right which the law gives him on reasons of public policy.*" (Emphasis supplied.)

Counsel for defendant seized upon this italicized portion to support their contention that considerations of public policy operate to prevent one from being *estopped* to assert the statute of limitation as a bar. Such a claim is both non-sequitur and untenable. We submit that this court in the two Steinfeld cases, supra, and the Mississippi Court in Crane v. French, supra, were dealing not with the doctrine of *estoppel* as in the instant case, but with the principle of *waiver*. A proviso in a contract attempting to waive the defense of limitations in advance of the running of the statute was involved in each of those cases. Hence (if taken literally), the emphasized portion of the quotation from the Crane case was dictum. It appears to us however that it was probably an unfortunate and inaccurate use by the Mississippi court of the word "estoppel" when in truth and in fact "waiver" was intended. If the latter word is supplied it becomes a true statement of the law. Fortifying our interpretation of the statement appearing in Crane v. French, supra, is the significant fact that the Supreme Court of Mississippi

in a later case, Izard v. Mikell, supra, acknowledged as applicable and applied the well-recognized principle of equitable estoppel to prevent one from asserting the statute of limitations as a bar to an action upon a promissory note and for foreclosure of a deed of trust.

Waiver is defined as a voluntary and intentional relinquishment of a known right, Home Owners' Loan Corp. v. Bank of Arizona, 54 Ariz. 146, 94 P.2d 437; In re Brandt's Estate, 67 Ariz. 42, 190 P.2d 497, whereas "estoppel" means that a party is precluded by his own acts from asserting a right to the detriment of another who, entitled to rely on such conduct, has acted thereon. Krivitsky & Cohen v. Western Union Tel. Co., 129 Misc. 431, 221 N.Y.S. 525, 528. This court in Munger v. Boardman, supra [53 Ariz. 271, 88 P.2d 539], in treating a question involving equitable estoppel quoted with approval this general definition taken from 10 R.C.L. 689, Sec. 19: "* * * That a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith, relied thereon. Such an estoppel is founded on morality and justice, and especially concerns conscience and equity. * * *."

In addition to a reliance upon the doctrine of equitable estoppel, heretofore considered, plaintiff correctly contends that decedent's alleged representations and con-

duct in impliedly promising that the notes would not be barred by limitation and that he had arranged his affairs so that the notes would be paid in due course of the administration of his estate, entitles him also to rely upon the doctrine of "promissory estoppel."

"* * * Promissory estoppel, * * * differs from equitable estoppel in that it rests on a promise to do something in the future, while the latter rests on a statement of present fact. * * *." 31 C.J.S., Estoppel, § 59(c), page 241.

The Restatement of the Law of Contracts, Sec. 90, p. 110, enunciates this doctrine in these words: "A promise which the promisor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise."

In the excellent text, Williston on Contracts, Rev.Ed., Vol. 1, Sec. 139, speaking of "promissory estoppel," the following statements are made and illustrations used under the heading "Estoppel as a substitute for consideration":

"* * * The commonest illustration of this doctrine is where one who has induced his creditor to forebear to bring action upon an enforceable claim by promise of payment or by a promise not to plead the Statute of Limitations as a defense, even though such forbearance was not requested as consideration for the promise, and though the new promise (because not in writing or for other reasons) was not binding as such, has not been allowed later to set up the Statute after the creditor relying upon the debtor's promise has refrained from bringing action until the statutory period has expired. * * * The law is clear that in any case where a party to a contract agrees to give up a possible further defense or foregoes the advantage of a condition provided for his benefit in an existing contract, the promise is binding if the promisee relying thereon changes his position. In these cases, however, no new right is created. The court does not sustain an action on the promise; it reaches the desired result by allowing a defense to an action or allowing an original right to be enforced by merely prohibiting the interposition of a defense.

\* \* \* \* \* \*

"The binding thread in all the classes of cases which have been enumerated is the justifiable reliance of the promisee and the hardship involved in refusal to enforce the promise." See also 31 C.J.S., Estoppel, § 80; 19 Am.Jur., Estoppel, Sec. 53; Fried v. Fisher, 328 Pa. 497, 196 A. 39, 115 A.L. R. 147 and Annotation page 152.

It must be conceded that decedent's writing of March 5, 1937, agreeing that the statute of limitation is not to bar any of the notes in question if it stood alone would be interpreted as an attempt to bind himself in advance of the running of the

statute to waive limitations, and would therefore be void as against public policy. Forbach v. Steinfeld, supra, and Steinfeld v. Marteny, supra. However this does not mean that such writing may not be considered along with the additional facts pleaded in determining whether a clear case of estoppel has been made out. The decedent not only signed and delivered this writing, but it is alleged that he, as a lawyer, represented to laymen, who were in confidential relations with him and depending upon him, that the writing would prevent the running of the statute. Also he represented that he had so arranged his affairs that the notes would not be barred. In addition it is pleaded that he got from the payees an agreement to extend the due date of the notes and not to collect them until after his death; that the payees relied on those representations and the position assumed by the decedent and fully performed their agreement to let the decedent keep their money during his lifetime; and that they did so to their detriment. We hold that grounds for invoking both equitable and promissory estoppel are sufficiently alleged.

We are further of the opinion that the amended complaint sufficiently alleges an oral agreement between A. W. Lennard and the Morehouses, entered into after the making of the notes sued upon and before the expiration of the limitation period, whereby the time for payment of both notes was extended until after Mr. Lennard's death when they were to be paid in the due course of administration of his estate. It was further alleged that the parties agreed that meanwhile the Morehouses would not enforce collection of the notes. The consideration supporting this agreement was the alleged mutual promises of the parties—the promise of Lennard on the one hand to keep the money and pay interest on it until the time of his death, and on the other hand the promise of the Morehouses to let him have the money and not demand or enforce repayment until that time.

We know of no statute in the State of Arizona requiring that an extension of time for the payment of a promissory note must be in writing. In fact our holdings in Button v. Wakelin, 41 Ariz. 84, 15 P.2d 956, and Munger v. Boardman, 53 Ariz. 271, 88 P.2d 536, are to the effect that an oral agreement to extend the time of payment is valid. See also following text statements: 8 Am.Jur., Bills and Notes, Sec. 291; 10 C.J.S., Bills and Notes, § 265.

Defendant, however, urges that the alleged oral agreement to extend the due date of the notes until the death of the promisor is unenforcible by reason of Sec. 58-101, A.C.A.1939, and relies particularly upon subsections 5 and 8 thereof. The pertinent part of this section is as follows:

"No action shall be brought in any court in the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof,

shall be in writing and signed by the parties to be charged therewith, or by some person by him thereunto lawfully authorized:

\* \* \* \* \* \*

"5. Upon an agreement which is not to be performed within the space of one (1) year from the making thereof;

. \* \* \* \* \* \*

"8. Upon an agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make any provision for any person by will."

 The alleged oral contract to extend the due date of the notes does not fall within subsection 5 of the above section for the reason that death of the promisor might have occurred within one year from the date of making of the oral contract. The possibility of performance within one year is sufficient to take such an oral agreement out of the operation of the statute of frauds. Steward v. Sirrine, 34 Ariz. 49, 267 P. 598; Gold v. Killeen, 44 Ariz. 29, 33 P.2d 595, 94 A.L.R. 448; Condon v. Arizona Housing Corp., 63 Ariz. 125, 160 P.2d 342. As to subsection 8, supra, defendant's position is that the agreement to extend the due date of the notes is not enforcible since it is not in writing as required by this paragraph. This position is not sound for two reasons: (1) The amended complaint alleges full performance of an oral contract by the More-

houses which alone, if proved, would take the case out of the operation of the statute of frauds. 37 C.J.S., Statute of Frauds, § 251; Diamond v. Jacquith, 14 Ariz. 119, 125 P. 712, L.R.A.1916D, 880; Condon v. Arizona Housing Corp., supra; (2) The complaint alleges further facts, which if proved, would estop defendant from setting up the defense of the statute of frauds. The legal principles relative to such an estoppel are laid down with clarity in 49 Am.Jur., Statute of Frauds, Sec. 581: "Estoppel to Assert Statute.—Closely allied to the principles of protection against assertion of the statute of frauds to accomplish a fraud upon the party who has acted in reliance upon an oral contract or the assertion of the statute as a shield to protect fraud is the doctrine of estoppel to assert the statute. It is universally conceded that the doctrine of equitable estoppel may be invoked to preclude a party to a contract from asserting the unenforceability of a contract by reason of the fact that it is not in writing as required by the statute of frauds. As is often said, the statute of frauds may be rendered inoperative by an estoppel in pais. Where one has acted to his detriment solely in reliance on an oral agreement, an estoppel may be raised to defeat the defense of the statute of frauds. This is based upon the principle established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing

fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consumation of a fraudulent scheme. It is called into operation to defeat what would be an unconscionable use of the statute, and guards against the utilization of the statute as a means for defrauding innocent persons who have been induced or permitted to change their position in reliance upon oral agreements within its operation."

Prior pronouncements of this court establish a recognition of the foregoing as sound principles of law. Diamond v. Jacquith, supra; Condon v. Arizona Housing Corp., supra; Cress v. Switzer, 61 Ariz. 405, 150 P.2d 86.

Defendant places some reliance upon Sec. 29-303, A.C.A.1939, which states that when an action is barred by limitation an acknowledgment in writing is necessary to take the case out of the operation of bar of limitations. This statute, in our opinion, has no bearing upon the problem under consideration as the extension agreement was entered into prior to the bar of the applicable statute of limitations.

The record before us discloses that plaintiff filed the present action for collection of the notes within less than one year from the death of deceased. Hence *any* applicable statute of limitations would not commence to run until decedent's death.

Defendant also contends plaintiff's allegation with respect to the representations of said Lennard that the writing of March 5, 1937 would prevent the notes from becoming barred by the statute of limitations, being a misrepresentation of law, is not a sufficient allegation of fraud upon which to base an estoppel to plead the statute of limitations. The well-recognized rule is that a misrepresentation as to a matter of law will not ordinarily support an action for fraud or deceit, nor constitute an estoppel to rely upon the statute of limitations. 53 C.J.S., Limitations of Actions, § 25. The reason for the rule is that representations as to matters of law are ordinarily considered to be expressions of opinion and justifiable reliance cannot be had upon mere opinion of another. However, the above rule does not apply where (1) the party making the representations is especially skilled in the law and the party to whom the representations are made is not so skilled, or (2) where there exists a relation of trust and confidence between the parties. 23 Am. Jur., Fraud and Deceit, Sec. 48; 37 C.J.S., Fraud, § 55; Restatement of the Law of Torts, Vol. 3, Secs. 542, 545; Provident Life & Acc. Ins. Co. v. Clark, 175 Okl. 282, 52 P.2d 763; Hobson v. Union Oil Co. of California, 187 Wash. 1, 59 P.2d 929. Under the exceptions above stated the reason for the general rule disappears because in both instances the party to whom the representations are made may be justified in relying upon the representations. The facts pleaded with respect to Lennard's superior knowledge of the law and

the existence of a confidential relationship between the parties brings this case within the above exceptions. It should also be noted that proof of fraud in its strict sense is not essential to invoke estoppel. This proposition is clearly stated in McLearn v. Hill, 276 Mass. 519, 177 N.E. 617, 620, 77 A.L.R. 1039: "Proof of fraud in its strict sense is not essential to estoppel. The more modern statement is that 'one is responsible for the words or act which he knows or ought to know will be acted upon by another.'"

 Unquestionably the executrix (defendant) stands in the shoes of decedent for as stated in Re Brandt's Estate, 67 Ariz. 42, 190 P.2d 497, 499: "There is such a privity between a decedent and the personal representative of his estate that an estoppel arising by reason of the decedent's conduct may be asserted against his representative."

. We have pointed out (1) that an enforcible extension agreement in parol is pleaded which cannot be defeated by a plea of the statute of frauds, as under the allegations of the complaint all of the elements of estoppel are present and therefore defendant is not entitled to rely on the statute, and (2) even if the extension agreement were eliminated, still sufficient facts are alleged both under "equitable estoppel" as well as "promissory estoppel" to estop the defendant from pleading the bar of the statute of limitations. The trial court therefore erred in granting the defendant's motion to dismiss the plaintiff's amended complaint.

The task of preparing this opinion has been greatly lessened by the excellent and exhaustive briefs submitted by the respective attorneys. We express our appreciation for their invaluable aid.

The judgment is reversed with directions to reinstate the complaint.

LA PRADE, C. J., and STANFORD, PHELPS, and DE CONCINI, JJ., concurring.